**The document below is hereby signed.**

**Dated: February 21, 2012.**



_____
**S. Martin Teel, Jr.
U.S. Bankruptcy Judge**

```
            UNITED STATES BANKRUPTCY COURT
             FOR THE DISTRICT OF COLUMBIA
```

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| NICKEY L. NEAGLE, | ) | Case No. 11-00025 |
| | ) | (Chapter 7) |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| UNITED STATES POSTAL SERVICE FEDERAL CREDIT UNION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Adversary Proceeding No. |
| v. | ) | 11-10050 |
| | ) | |
| CIT SMALL BUSINESS LENDING CORPORATION, | ) | **Not for Publication in West's Bankruptcy Reporter** |
| | ) | |
| Defendant. | ) | |

<u>MEMORANDUM DECISION RE MOTION TO DISMISS</u>

This adversary proceeding is a lien priority dispute between a credit union, the United States Postal Service Federal Credit Union ("Credit Union"), and the CIT Small Business Lending Corporation ("CIT"). The adversary proceeding is being pursued

in the bankruptcy case of Nickey L. Neagle.[1] CIT filed a motion to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, made applicable to this proceeding through Rule 7012 of the Federal Rules of Bankruptcy Procedure.

The Credit Union's complaint establishes these facts. On June 10, 2005, Neagle granted CIT a deed of trust against his real property to secure payment of a debt owed to CIT, but CIT did not record that deed of trust until September 26, 2006. The Credit Union conducted a title search on or about October 11, 2006, and failed to discover CIT's deed of trust because of the inherent time delay — commonly known as the "gap period" — that exists between the date an instrument is submitted for recordation among the District of Columbia Land Records and the date the instrument is available to appear in a title search. The Credit Union then made a loan to Neagle on October 27, 2006, and filed a deed of trust on the debtor's property to secure that loan on November 7, 2006.

In seeking dismissal of this adversary proceeding, CIT sets forth the following legal analysis with which the Credit Union does not disagree. In the District of Columbia, "a prior lien gives a prior legal right ('first in time, first in right'),

---

[1] The court has subject matter jurisdiction under 28 U.S.C. § 1334(b), and the proceeding is a core proceeding under 28 U.S.C. § 157(b) because it concerns the adjudication of the priority of claims against the estate.

2

except where statute varies the common law rule." *District of Columbia v. Franklin Inv. Co.*, 404 A.2d 536, 540 (D.C. 1979); *see also Fid. Nat'l Title Ins. Co. of New York v. Tillerson*, 2 A.3d 198, 201-02 (D.C. 2010) (applying "first in time, first in right"); *GMAC Mortg., LLC v. DeRose (In re DeRose)*, No. 08-10031, 2009 WL 5217046, at *4 (Bankr. D.D.C. 2009) (same).  The D.C. Code clearly and unambiguously prefers a first recorded deed over a later recorded deed.[2]  Section 42-406 of the D.C. Code provides:

> When 2 or more deeds of the same property are made to bona fide purchasers for value without notice, the deed or deeds which are first recorded according to law shall be preferred.

CIT was undeniably a "bona fide purchaser for value without notice."  *See Assocs. Fin. Servs. of Am. v. District of Columbia*, 689 A.2d 1217, 1222 (D.C. 1997) ("[T]he determinative factors are whether a party takes an interest in the property in exchange for value and without notice of an outstanding claim.").

Despite not disagreeing with these observations, the Credit Union contends that because CIT delayed in recording its deed of trust, CIT is equitably estopped from asserting priority of its lien over the Credit Union's lien.  "A party raising equitable estoppel must show that he changed his position prejudicially in

---

[2] For purposes of determining the effect of recording, the D.C. Code treats deeds of trust in the same manner as absolute deeds.  D.C. Code Ann. § 42-801.

3

reasonable reliance on a false representation or concealment of material fact which the party to be estopped made with knowledge of the true facts and intent to induce the other to act." *Nolan v. Nolan*, 568 A.2d 479, 484 (D.C. 1990) (citing *Cassidy v. Owen*, 533 A.2d 253, 255 (D.C. 1987)); *see also Duke v. Am. Univ.*, 675 A.2d 26, 27 n.1 (D.C. 1996).

Even if equitable estoppel could apply in some case to set aside the priorities established by the D.C. recording statutes, the Credit Union's reliance on equitable estoppel on the facts alleged here fails for two reasons.

First, CIT did not make a false representation.  By not filing, CIT was not representing that it had no deed of trust, and, instead, was taking the risk that its deed of trust might be recorded after some other lender filed a later deed of trust. The absence of a recorded lien in the title search was not inconsistent with the existence of a lien recorded too late to show up in the title search.  The Credit Union does not allege that CIT advised it that it had no lien, recorded or otherwise.

Though a party's silence may amount to a false representation for purposes of equitable estoppel, this is true only where the party had an obligation to speak.  *See Wiser v. Lawler*, 189 U.S. 260, 270, 23 S. Ct. 624, 628 (1903) ("To constitute an estoppel by silence there must be something more than an opportunity to speak.  There must be an obligation.");

4

*see also Am. Sav. v. Bell*, 562 F. Supp. 4, 9 (D.D.C. 1981). Moreover, the silence must be deceptive in the sense that "[t]he party maintaining silence must have known that some one was relying thereon, and was either acting, or about to act, as he would not have done had the truth been told." *Willis v. Rice (In re Willis)*, 345 B.R. 647, 652 (8th Cir. B.A.P. 2006) (quoting *Rath Packing Co. v. Paul Blood Farms, Inc.*, 419 F.2d 13, 17 (8th Cir. 1969)). The facts fail to establish that CIT had an obligation to disclose its deed of trust.[3] The Credit Union does not allege that CIT was aware that the Credit Union was relying on a title search that did not show the CIT deed of trust when the Credit Union decided to make a loan to Neagle. Nor does the Credit Union allege that CIT remained silent to induce the Credit

---

[3] D.C. Code § 47-1431(a) requires that within 30 days of the execution of a deed, a security interest in real property, or a mortgage, the holder of the deed or mortgage or security interest shall file a copy thereof with the Recorder of Deeds of the District of Columbia. Section 47-1431 is part of Chapter 14, entitled "Taxation of Recordation and Transfers of Real Property" and appears to be intended to facilitate enforcement of the tax laws, not to specify requirements for perfection of deeds, security interests, and mortgages. *See Harris v. Maryland Nat'l Bank (In re Harris)*, 165 B.R. 729, 732 n.4 (Bankr. D.D.C. 1994), *rev'd on other grounds,* 183 B.R. 657 (D.D.C. 1994). For a failure to comply with § 47-1431(a), D.C. Code § 47-1433 imposes, in certain instances, penalties to which the tax penalty waiver provisions of D.C. Code § 49-4221 apply under D.C. Code § 47-4221(b)(6). Whatever obligation CIT had under § 47-1431(a), it was an obligation owed to the District of Columbia, not an obligation owed to a subsequent lienor (who, by recording prior to CIT recording, would have benefitted from, not harmed by, CIT's failure to comply with § 47-1431(a)). There is no precedent holding that a failure to file within the 30-day period renders a deed of trust unenforceable.

5

Union to make the loan.  As a consequence, CIT's silence was not concealment or a false representation.

Second, there was no reasonable reliance on the part of the Credit Union.  The Credit Union was aware that any purchaser's deed of trust filed prior to the filing of its deed of trust would take priority under the D.C. statute, regardless of when that deed of trust had been granted.  It knew that there is a time delay between the date an instrument is submitted for recordation among the District of Columbia Land Records and the date the instrument is available to appear in a title search.  It thus knew that if it advanced funds to Neagle at a time that another instrument had been submitted for recordation but was not yet available to appear in a title search, its deed of trust would be treated as junior to that lien.  Accordingly, the Credit Union's reliance on CIT's deed of trust not showing up in the October 11, 2006 title search was unreasonable as a matter of

law.[4]

In reviewing a motion to dismiss, the court must treat the complaint's factual allegations as true "even if doubtful in fact." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1950 (2009). The complaint does not set forth a claim for relief under the District of Columbia recording statutes. Additionally, the facts do not state a claim for equitable estoppel, because they do not show that CIT made a false representation or that the Credit Union reasonably relied on the October 11, 2006 title search.

Accordingly, the court will grant the motion to dismiss and will grant the plaintiffs leave to amend the complaint. An order

---

[4] If, as pled by the complaint, there is a "gap period" in the recordation of liens, the Credit Union could have protected itself by requiring Neagle to agree that the Credit Union would file its deed of trust without immediately disbursing funds to Neagle, that funds would not be disbursed to Neagle if there were any deed of trust on the property that had not been disclosed by Neagle, and that disbursement would be delayed until a period after which any deeds of trust filed before the recording of the Credit Union's deed of trust would show up on a title search. Even if that would not have been commercially reasonable or feasible, the Credit Union necessarily took what it should have known was a risk that some other deed of trust (whether granted recently or ages ago) might have been recorded in the "gap period" before the title search on October 11, 2006, or might be recorded after the title search and before the recordation of the Credit Union's deed of trust on November 7, 2006.

7

follows.

[Signed and dated above.]


Copies to: Counsel of record.